UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Angel Perry,<br><br>                              Plaintiff,<br><br>     v.<br><br>North American Dental Group, LLC, North American Dental Management, LLC, and Eaves Family Dental Geneva, PLLC, d/b/a Eaves Family Dental Group,<br><br>                              Defendants. | Case No.: 6:24-cv-6741<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Ms. Angel Perry, by and through her attorneys, J. Morgan Levy Firm, PLLC, for her complaint against defendants North American Dental Group, LLC, North American Dental Management, LLC (together "NADG") and Eaves Family Dental Geneva, PLLC (d/b/a "Eaves Family Dental Group") ("Eaves Dental") respectfully states:

## INTRODUCTION

1. This is an action seeking declaratory, and equitable relief, as well as monetary damages, to redress defendants NADG and Eaves Dental for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e17 ("Title VII") and its implementing regulations at 29 C.F.R. § 1606, et seq. ("Title VII Regulations"), and New York State Human Rights Law ("NYSHRL") for subjecting Ms. Perry to sexual harassment, creating a hostile work environment, and for retaliating against her for complaining about such harassment.

2. This is also an action against defendants to redress their retaliatory actions against Ms. Perry in violation of New York State Labor Law ("NYLL") § 741.

3. From September 2018 to May 2019, Ms. Perry was employed as a dental assistant by defendants in their Geneva, New York office.

4. During this time, defendant employee and Ms. Perry's supervisor, Dr. Marcia White ("Dr. White"), relentlessly and openly subjected Ms. Perry to sexual harassment, assault, and discrimination.

5. Among other things, Dr. White subjected Ms. Perry to sexual harassment, including by physically grabbing her shirt at her breasts and hitting her in the genitals with a rolled-up poster.

6. Additionally, defendants forced Ms. Perry to endure a hostile work environment based on her sex and gender.

7. Dr. White repeatedly commented Ms. Perry looked "fat" and "pregnant", physically assaulted Ms. Perry in front of patients and co-workers, and commented on patients' sexual relationships to Ms. Perry and other co-workers.

8. When Ms. Perry reported this persistent harassment, assault, and discrimination, defendants did not support Ms. Perry or try to stop the behaviors from occurring.

9. Instead, defendants retaliated against Ms. Perry by:

   a. Refusing to properly investigate her claims;

   b. Reducing her hours and pay;

   c. Subjecting her to sham performance reviews;

   d. Refusing to allow her to attend training;

   e. Forcing her to transfer to an office over an hour away; and

   f. Ultimately terminating her employment.

10. Defendants' unlawful conduct was knowing, willful, and wanton and/or showed a reckless disregard for Ms. Perry's protected rights, which has caused and continues to cause her to suffer substantial economic and non-economic damages.

11. Defendants' failure to abide by its obligations under federal and state law have forever and irrevocably harmed plaintiff.

12. Ms. Perry filed an Equal Employment Opportunity Commission ("EEOC") complaint case number 525-2019-01429 on August 28, 2019, and on September 24, 2024, the EEOC determined there is "reasonable cause to believe that violations of the statute(s) occurred […]".

13. A true and accurate copy of this EEOC correspondence is included at Exhibit A.

## JURISDICTION AND PARTIES

14. Plaintiff resides in the Town of Walworth, County of Wayne, State of New York.

15. Eaves Family Dental Geneva, PLLC is a domestic professional service limited liability company, formed in Yates County, New York.

16. Eaves Family Dental Geneva, PLLC does business under the name Eaves Family Dental Group, and operates in Geneva, New York; Bath, New York; and Penn Yan, New York.

17. Upon information and belief, North American Dental Group, LLC is a dental services organization organized under the laws of the state of Delaware with a principal place of business located in Pittsburgh, Pennsylvania.

18. Upon information and belief, North American Dental Management, LLC is limited liability corporation organized under the state of Ohio and is registered as a foreign limited liability corporation with the New York State Department of the Secretary of State.

19. Upon information and belief North American Dental Management, LLC owns, controls, or is a parent of North American Dental Group, LLC.

20. Upon information and belief NADG owns or controls Eaves Dental and/or provided human resources services for Eaves Dental.

21. At all times relevant to this complaint Dr. Marcia White was a dentist and a supervisory employee of defendants NADG and Eaves Dental and acted within the scope of her employment.

22. At all times relevant to this complaint Ms. Jessi Eaves, Ms. Anne Olmstead, Ms. Alex King, and an individual named "Missy," an office manager at the Penn Yan location, were employees of defendants NADG and Eaves Dental, and acted within the scope of their employment.

23. NADG employs more than 15 people.

24. NADG is an "employer" as defined by 42 U.S.C. § 2000e(b).

25. Eaves Dental employs more than 15 people.

26. Eaves Dental is an "employer" as defined by 42 U.S.C. § 2000e(b).

27. NADG is an "employer" as defined by NYSHRL § 292(5).

28. Eaves Dental is an "employer" as defined by NYSHRL § 292(5).

29. Venue is proper in the Western District of New York pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

30. This court has general jurisdiction over defendant Eaves Dental because Eaves Dental was formed in Yates County, New York State, and operates in Ontario County, New York.

31. This court has general jurisdiction over defendant NADG because upon information and belief, NADG owns, operates, and/or controls one or more businesses within this district.

32. This court also has specific jurisdiction over defendant NADG because NADG has purposefully directed its activities at Ontario County, New York, these claims arise out of or relate to NADG's activities in Ontario County, New York, and exercising jurisdiction would be fair and reasonable.

33. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under Title VII, a federal law, and pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy in this matter is over $75,000 and plaintiff and defendant NADG are citizens of different states.

34. We request this court exercise supplemental subject matter jurisdiction over plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367 because these claims are part of the same claim or controversy as plaintiff's federal claims.

## FACTS COMMON TO ALL CAUSES OF ACTION

35. Defendants jointly hired Ms. Perry as a full-time dental assistant in their Geneva, New York office on or about September 24, 2018.

36. A true and accurate copy of Ms. Perry's hire letter is included at Exhibit A to this complaint. *See* Exhibit A, pgs. 8-9.

37. During Ms. Perry's employment with defendants, Dr. Marcia White supervised her.

38. Beginning on or about the week of November 27, 2018, Dr. White repeatedly told Ms. Perry, often multiple times daily, that she "look[s] pregnant," was "fat," and needed to "lose weight."

39. During that same week, Dr. White sexually harassed Ms. Perry.

40. Specifically, Dr. White grabbed Ms. Perry's scrub top at her breasts and pulled the

material, trying to stretch it over her breast area, while saying that Ms. Perry looked pregnant and was too fat to be wearing the scrub top.

41. Dr. White's harassing Ms. Perry occurred in front of several co- workers.

42. Ms. Perry was shocked by Dr. White's behavior.

43. Shortly afterwards, during the first week of December 2018, Ms. Perry complained about the above incidents to Ms. Jessi Eaves, Regional Manager, and Ms. Anne Olmstead, Ms. Perry's direct supervisor.

44. Defendants, however, took no action against Dr. White after Ms. Perry complained and, upon information and belief, did not investigate her complaint.

45. Afterwards Dr. White retaliated against Ms. Perry for making this complaint by continuing verbal and physical harassment of Ms. Perry into the new year.

46. In January 2019, Dr. White sexually assaulted Ms. Perry again.

47. Specifically, when Ms. Perry mentioned needing time off for a doctor's appointment, Dr. White rolled up a poster and hit Ms. Perry in her vaginal area with the poster, as she announced to another co-worker that Ms. Perry had to take off for "that kind of *lady* appointment!" Another co-worker also witnessed this assault.

48. Between January 2019 and May 2019, Dr. White physically assaulted Ms. Perry on numerous occasions, including physically hitting Ms. Perry's arms or hands to warn Ms. Perry not to discuss Dr. White's errors in front of a patient.

49. Around this same time, Dr. White also repeatedly verbally abused Ms. Perry in front of patients, calling Ms. Perry "stupid" and dumb".

50. Upon witnessing Dr. White's treatment of Ms. Perry, several patients told Ms. Perry that she should not have to deal with this type of mistreatment, and that Dr. White was rude towards her.

51. During a professional development meeting for all employees on February 13, 2019, employees were told that oral cancer was related to the sexually transmitted disease, Human Papillomavirus (HPV).

52. When Ms. Perry asked a question regarding the transmission of that disease, Dr. White openly shouted in response, "Shut up Angel! That is such a stupid question! Everyone knows that", and then loudly laughed at her.

53. Ms. Perry was humiliated by Dr. White's outburst.

54. Then, on or about April 2, 2019, Dr. White directed her assistant, an individual with the first name Evelyn, to tell Ms. Perry she needed to wear a lab jacket to cover her "ass," specifically so that a patient, who, per Dr. White, had a "hard dick" every time he was in the office, would not be staring at Ms. Perry's "ass."

55. Around that same time, Dr. White made crude and sexually offensive comments to Ms. Perry regarding the "sexual treatment" one of the practice's male patients was getting at home from his husband.

56. Following her initial complaint in late 2018, Ms. Perry made several additional complaints to Ms. Eaves, Ms. Olmstead, and Missy, regarding Dr. White's harassing her.

57. While NADG approached Dr. White in response to Ms. Perry's complaints, this only resulted Dr. White's further mistreating Ms. Perry.

58. In example, after NADG talked with Dr. White, Dr. White continued her offensive comments in front of staff, stating she needed to watch what she says now because *someone* was sensitive, while rolling her eyes. The clear implication was that Ms. Perry was the "someone".

59. Then, in or around April 2019, Ms. King, directed Ms. Perry read a book on dental practice before a meeting scheduled for the following week.

60. Because defendants previously directed Ms. Perry to read similar materials during her work hours, Ms. Perry did just that.

61. When Dr. White saw Ms. Perry reading these materials at work she reported Ms. Perry for potential disciplinary action.

62. Upon information and belief, Dr. White reported Ms. Perry in retaliation for Ms. Perry's repeated complaints about Dr. White's harassing her.

63. This resulted in Ms. Perry's office manager and supervisor, Ms. King, writing an Employee Coaching Form for Ms. Perry on or around April 10, 2019.

64. When Ms. King approached Ms. Perry to discuss Ms. Perry's alleged negative performance on April 17, 2019, she did so in a manner allowing Dr. White to listen in.

65. On or about April 17, 2019, after five months of assault, harassment, and defendants' failure to address any of her complaints, Ms. Perry reported all of Dr. White's behaviors to NADG's human resources department.

66. In response to Ms. Perry's verbal complaint to NADG human resources, defendants asked Ms. Perry to complete a written complaint form with a detailed listing of the incidents of sexual harassment and hostile work environment, and a list of witnesses.

67. Ms. Perry began to work on this document, as asked.

68. After Ms. Perry's complaining to human resources in April 2019, the only actions defendants seem to have taken were to inform Ms. Perry she was not allowed to work with Dr. White without a manager on duty.

69. Dr. White continued to harass Ms. Perry.

70. Additionally, defendants further retaliated against Ms. Perry by reducing her hours and pay, and, refusing to allow Ms. Perry to attend previously scheduled training,

and attempting to force Ms. Perry to work in defendants' Penn Yan office—an office about an hour away from Ms. Perry's home, or about 30 minutes longer of a commute, each way.

71. Ms. Perry declined the "offer" of working in Penn Yan because as a single mother, it would be impossible for her to commute an extra hour each day, particularly on rural roads and often in poor weather conditions.

72. While defendants attempted to explain these restrictions as actions taken with Ms. Perry's best interests in mind; they were not.

73. These actions were adverse employment actions taken by defendants because Ms. Perry reported harassment and Dr. White's unsafe patient care.

74. Instead of holding Dr. White accountable for her behaviors, defendant punished Ms. Perry.

75. Ms. Perry began experiencing hostility by co-workers who were forced to perform additional duties due to her absences.

76. On May 10, 2019, defendants advised Ms. Perry they had concluded their investigation - before Ms. Perry had submitted the written complaint form and list of witnesses they requested from her.

77. As a New York State employer, defendants were obligated to have a policy promising to conduct a thorough investigation regarding Ms. Perry's complaints.

78. Regardless, on May 13, 2019, Ms. Perry submitted the written complaint form and list of witnesses.

79. Two days later, on May 15, 2019, Ms. Kim Sloan, Director, Human Resources, NADG, and Ms. Caroline Oldsey, Vice President, Human Resources, NADG, provided Ms. Perry a determination letter regarding its investigation. *See* Exhibit A,

pgs. 10-11.

80. This letter demonstrates investigators believed Dr. White's account over Ms. Perry's, although it is unclear why.

81. The investigators wrote Dr. White denied touching Ms. Perry in any inappropriate manner but fail to provide any rationale about why her perspective was more credible than Ms. Perry's.

82. This letter also stated, "During our investigation, it was confirmed that Dr. White did make insensitive comments about your appearance to others… We were unable to obtain confirmation of your other claims." *See* Exhibit A, pg. 10.

83. Since defendants had Ms. Perry's written complaint and witness list only two days before issuing this letter, it is clear its inability to "obtain confirmation" of Ms. Perry's claims was due to its unwillingness to perform an investigation into Ms. Perry's complaint.

84. The letter stated after Ms. Perry reported Dr. White's making insensitive comments about her appearance to others "it was addressed with Dr. White on 11/30/18, and to our knowledge, it has not happened again." *See* Exhibit A, pg. 10.

85. This is untrue, as NADG is well aware. Ms. Perry made multiple additional reports between her first report and her April 2019.

86. These reports were made to Ms. Olmstead, Ms. King, and Ms. Eaves.

87. The letter further explained NADG had determined Ms. Perry was not the victim of harassment or retaliation and the claims made against Dr. White were not based on any protected trait.

88. In this same paragraph discussing these comments, investigators note, "Dr. White also informed us that you frequently disagree with her professional judgment and

push back on her directives to you". *See* Exhibit A, pg. 10.

89. Given Dr. White's history of engaging in behaviors harmful to her patients, it is not unreasonable for dental professionals working with her to disagree with her professional judgement.

90. One example of Ms. Perry's disagreeing with Dr. White's "professional" judgement time Ms. Perry is when Dr. White failed to place a filling in a root canal-closing up the tooth with no filing; when Ms. Perry attempted to "push back" on Dr. White by handing her additional filing material, Dr White told Ms. Perry, "shut your mouth".

91. Ms. Perry also "pushed back" when Dr. White crowned the wrong tooth on a patient.

92. Ms. Perry further "pushed back" when Dr. White repeatedly had difficulty remembering adult teeth numbers.

93. Ms. Perry repeatedly reported these mistakes to defendants.

94. In short, Ms. Perry refused to remain silent when Dr. White made mistakes in patient care and reported these serious issues to defendants.

95. Without a full or real investigation, defendants disregarded Ms. Perry's concerns about patient safety determining Dr. White's perspective (that Ms. Perry inappropriately "pushed back") was more credible.

96. Finally, the determination letter informed Ms. Perry she was being immediately transferred to work in the Penn Yan office (an offer she already declined) and that if she decided the transfer was not in her best interests, she would lose her employment.

97. This transfer constituted the constructive termination of Ms. Perry's employment.

98. A copy of the termination letter, stating that this constructive termination was due to Ms. Perry's having filed the internal complaint of sexual harassment and retaliation

with human resources, is attached as Exhibit A, pgs. 10-11.

99. As a result of defendants' actions, Ms. Perry sustained damages, including lost wages and emotional distress.

## FIRST CAUSE OF ACTION
### Hostile Environment Harassment
### in Violation of Title VII

100. Ms. Perry repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

101. Ms. Perry is a member of a protected class, as she is a woman, and defendants knew she was a woman.

102. Both defendants are employers pursuant to 42 U.S.C. § 2000e(b) and are subject to Title VII.

103. Ms. Perry, in all respects, was qualified for her job with defendants and performed her job satisfactorily.

104. Defendants discriminated against Ms. Perry by subjecting her to a hostile environment.

105. Examples of defendants' discriminatory behaviors are including in paras. 36, 38-9, 42, 45-50, 54-65, 70, 75, and 95-6, above.

106. Ms. Perry subjectively perceived the environment at defendants' workplace to be hostile and abusive.

107. The environment at defendants' workplace was objectively hostile and abusive, and permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the terms of her employment.

108. Defendants' actions were taken with a willful and wanton disregard of Ms. Perry's rights under Title VII.

109. As a direct and proximate result of defendants' unlawful actions, Ms. Perry suffered economic damages, including but not limited to loss of wages and benefits, and non-economic damages, including emotional distress, psychological injury, mental

anguish, humiliation, and degradation.

110. Ms. Perry is entitled to economic and non-economic damages in an amount to be determined at trial, plus pre-judgment interest and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Retaliation
### in Violation of Title VII

111. Ms. Perry repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

112. Ms. Perry reported Dr. White's harassing her on the basis of sex to defendants as more fully described in paras. 43, 56, and 65 above.

113. After reporting Dr. White's harassment, defendants retaliated against Ms. Perry as more fully described above, including by:

   a. Refusing to properly investigate her claims of discrimination;
   b. Reducing her hours and pay;
   c. Subjecting her a sham performance review;
   d. Refusing to allow her to attend training;
   e. Forcing her to transfer to an office over an hour away; and
   f. Terminating her employment.

114. Additionally, as more fully described in, including, but not limited to in paras. 56-8, and 75 above, defendants' failure to appropriately respond to her claims of sexual harassment within its workplace also resulted in Ms. Perry experiencing retaliatory harassment and created a hostile environment.

115. Defendants' actions were taken with a willful and wanton disregard of Ms. Perry's rights under Title VII.

116. As a direct and proximate result of defendants' unlawful actions, Ms. Perry suffered

economic damages, including but not limited to loss of wages and benefits, and non-economic damages, including emotional distress, psychological injury, mental anguish, humiliation, and degradation.

117. Ms. Perry is entitled to economic and non-economic damages in an amount to be determined at trial, plus pre-judgment interest and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Hostile Environment in
### Violation of New York State Human Rights Law

118. Ms. Perry repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

119. Ms. Perry is a woman and is known by defendants to be a woman.

120. Defendants are "employers" as defined by NYSHRL § 292 (5) and are subject to its provisions.

121. Ms. Perry was qualified to hold the position of dental assistant during her employment with defendants and performed her duties competently.

122. Defendants subjected Ms. Perry to continuous sexual harassment, creating inferior working conditions, as described in paras. 36, 38-9, 42, 45-50, 54-65, 70, 75, and 95-6, above.

123. Defendants' conduct constitutes unlawful employment practices under the NYSHRL by permitting, condoning, and engaging in such acts of harassment, discrimination, and retaliation.

124. Defendants failed to take reasonable steps to prevent or remedy the harassment and discrimination, thereby violating Ms. Perry's rights under the NYSHRL.

125. As a direct and proximate result of defendants' unlawful actions, Ms. Perry suffered economic damages, including but not limited to loss of wages and benefits, and non-

economic damages, including emotional distress, psychological injury, mental anguish, humiliation, and degradation.

126. Ms. Perry is entitled to economic and non-economic damages in an amount to be determined at trial, including back pay, front pay, emotional distress damages, pre-judgment interest, attorneys' fees, and costs, as well as any other relief deemed just and proper under the NYSHRL.

### FOURTH CAUSE OF ACTION
### Retaliation in
### Violation of New York State Human Rights Law

127. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

128. Ms. Perry reported Dr. White's harassing her on the basis of sex as more fully described in paras. 43, 56, and 65 above.

129. After reporting Dr. White's harassment, defendants retaliated against Ms. Perry as more fully described above, including by:

    a. Refusing to properly investigate her claims of discrimination;

    b. Reducing her hours and pay;

    c. Subjecting her a sham performance review;

    d. Refusing to allow her to attend training;

    e. Forcing her to transfer to an office over an hour away; and

    f. Terminating her employment.

130. Additionally, as more fully described in, including, but not limited to, paras. 56-8, and 75 above, defendants' failure to appropriately respond to her claims of sexual harassment within its workplace also resulted in Ms. Perry experiencing retaliatory harassment and created a hostile environment for victims of sexual harassment,

including Ms. Perry.

131. Defendants' actions were taken with a willful and wanton disregard of Ms. Perry's rights under NYSHRL

132. As a direct and proximate result of defendants' unlawful actions, Ms. Perry suffered economic damages, including but not limited to loss of wages and benefits, and non-economic damages, including emotional distress, psychological injury, mental anguish, humiliation, and degradation.

### FIFTH CAUSE OF ACTION
### Retaliatory Termination for Whistleblower Protections
### in Violation of
### New York Labor Law § 741

133. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

134. Ms. Perry complained to defendants of Dr. White's poor patient care several times.

135. Ms. Perry's reporting to defendants, as more fully articulated in paras. 10, 65, 85-7, above, that Dr. White made multiple mistakes while performing dental services to defendants' patients constituted a disclosure to a supervisor of an activity, policy, or practice of the employer that the employee reasonably believes constitutes improper quality of patient care or a substantial and specific danger to public health or safety.

136. That defendants disregarded Ms. Perry's concerns is clear as in their response to Ms. Perry's complaint of harassment - they cited Ms. Perry's "frequently disagree[ing] with [Dr. White's] professional judgment and push[ing] back on [Dr. White's] directives" (*see* Exhibit A, pg. 10) as a bizarre rationale for finding Dr. White more credible.

137. Defendants terminated Ms. Perry because she complained about Dr. White's substandard patient care.

138. For defendants' termination of Ms. Perry because she engaged in whistleblower activities, Ms. Perry is entitled to full compensation for lost wages, benefits, and other remuneration; the payment by the defendants of reasonable costs, disbursements, and attorney's fees, punitive damages, and a civil penalty of $10K.

139. As a direct and proximate result of defendants' unlawful actions, Ms. Perry suffered economic damages, including but not limited to loss of wages and benefits, and non-economic damages, including emotional distress, psychological injury, mental anguish, humiliation, and degradation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

(a) In the form of compensatory, punitive, or exemplary damages in an amount to be proven at trial,

(b) That included such other, further, or different relief as the Court may deem just and proper, together with attorneys' fees, costs, and disbursements of the action.

DATED:   December 23, 2024
         Rochester, New York

J MORGAN LEVY FIRM PLLC

By: */s/ J. Morgan Levy*
J. Morgan Levy, Esq.
Attorneys for Plaintiff
24 N. Main Street., Suite 2
Fairport, New York 14450
T: 585-678-1160
E: morgan@jmorganlevyfirm.com